5-24-1301 Zierski v. Safe & Fair Food Company Appellant, when you're ready, you may proceed. Please identify yourself for the record. May it please the court, Alex Karasik on behalf of Appellant, Safe & Fair Food Company. Good morning, Your Honor. Good morning, Counsel. We're here because the trial court abuses discretion by not transferring this case out of St. Clair County when St. Clair County has no nexus to this litigation. No parties are from St. Clair County. No injury occurred in St. Clair County. No witnesses are from St. Clair County. St. Clair County has simply zero interest in this lawsuit. On the contrary, Cook County has lots of connections to this lawsuit. Appellant is a Cook County-based business. Mr. Zierski attended meetings for Appellant in Cook County. Cook County is the place where most of Appellant's witnesses live, including the five witnesses who were deposed in Rule 187 depositions. And simply put, the trial court abused its discretion when it found all of the private interest and public interest factors weigh in favor of an out-of-state plaintiff who was foreign to the St. Clair Forum. Let's start with the public interest factors. These factors include the interest of the jury pool in terms of the litigation, deciding localized controversies locally, and the administrative difficulties presented to the docket in terms of the court docket where the litigation will be held. The trial court disposed of these three private interest factors in eight sentences without citing a single case. The trial court's analysis wholeheartedly ignored well-established precedent from this court, including Coon v. Nickel, 2020, I.L. at 5th, 190225, Shaw v. Haas, 2019, I.L. at 5th, 180588, Smith v. Walgreens, 2024, I.L. at 5th, 240394, among others, and Brandt v. Shekar, 2020, I.L. at 5th, 190137. There is no reason why a juror in St. Clair County should be forced to attend a trial in a dispute involving a Eureka, Missouri, resident in a Cook County business. The residents of St. Clair County have no interest in this case, and there's nothing to suggest that they should have to sit through that trial. In terms of trying localized controversies locally, there's nothing local about this case to St. Clair County. Plaintiff is from Eureka, Missouri. He worked in motorist Eureka from the county seat of St. Clair. St. Clair, I believe, is the second closest county in Illinois to Eureka behind Monroe County. I believe it's approximately 35 to 40 miles, but I may not be 100% sure on that. How far is Cook? Cook County is a little over 300 miles. And so that's the plaintiff's choice to file in St. Clair? Correct, the plaintiff's choice. Deference, is that accorded? Well, the Foreign Nonconvenience Doctrine affords deference to where a plaintiff files lawsuit. When the plaintiff is foreign to a forum, it should afford plaintiff less deference. Is the defendant a resident of Cook? Yes. I have, I think in the briefs, the appellee states that all they have is some kind of answering service or something. Do you want to address that? Defendant is based in Cook County. Its headquarters were in Cook County. It used to meet more regularly in Cook County. What kind of headquarters? It used to be more in-person meeting headquarters, and now that's just simply where its address would be. But the business executives live in the Chicagoland area around Cook County, and they'll meet at various locations. So it may not be in an office building. It may not be in a warehouse. But Cook County is where they perceive themselves to be headquartered and where they market themselves to be headquartered to the general public. Where they get the mayor? Correct. Where the president and vice president live?  The CEO of the company lives in Barrington, which is a suburb of Chicago. Okay. So Cook County is essentially the nerve center. The five forum depositions that occurred were taken in Cook County by the appellee. These are individuals who are executives. The company afforded Mr. Dzirsky the opportunity to work remotely in Missouri, but Mr. Dzirsky did not make any sales in St. Clair County. He did not work in St. Clair County. He did not have any clients in St. Clair County. And he testified that he did not make any meaningful business developments in St. Clair County that would have contributed to his bonus. And this is not a tort claim, right? Correct. This is a breach of contract claim over a sales bonus. And so it's over how much money? Claimant, I believe, is claiming $140,000. So who's going to be testifying live at the trial? On behalf of State FinFair, it would be the CEO who is ultimately the person who's the final decision maker in terms of making the bonus. He's a resident of the Cook County, Chicagoland area. He would be the director of operations who attended weekly sales meetings with Mr. Dzirsky. Mr. Dzirsky would report to him what type of product he would need to make the sales. He would communicate weekly about whether there was excess product from unmade sales. And then from there, he would have firsthand personal knowledge about the sales made by Mr. Dzirsky, because he's the one who's ordering the product and determining whether or not more product needs to get purchased by the company. The director of finance at the time, or the head of the finance, Susan Hock, would have had firsthand knowledge in regards to Mr. Dzirsky's 2022 bonus. He seeks bonuses for the years 2021 and 2022. Even though he separated the company during the year of 2022, he said in his pleading that he's seeking a partial bonus for that year. Ms. Hock knew Mr. Dzirsky, met with him. She knew firsthand about the type of sales he would have made in her finance position. Jeff Mays, the chief financial officer, again, another resident of the Chicagoland area in Cook County. He's the current chief financial officer who came in after in the 2022 era. He has knowledge about the company's finances as a result of the sales made, or in our case, not made by Mr. Dzirsky. He would be able to testify in terms of those financial records. Those are the current trial witnesses that we anticipate, and all of those trial witnesses are based in the Chicagoland Cook County area. More notably, there's not a single other witness in this case who lives in Illinois that's been disclosed by any party other than Safe and Fair. Plaintiffs' proposed witnesses that they list are based in Ohio, which is closer to Cook County, New York, which is closer to Cook County, Brazil, which is far away from both counties, but would be easier to get to Cook County by an international flight, North Carolina, which is roughly equidistant to Cook County and St. Clair County, and Missouri. But there's nothing in the record to show that any of those witnesses will actually be able to be compelled to come to a trial, whether it's in St. Clair County or Cook County. So the witnesses that we know, the witnesses who have been deposed, and the witnesses who have testified, they have first-hand knowledge about the sales made by Mr. Dzirsky, live in Cook County or in Colorado County. How many witnesses have been deposed that do have first-hand knowledge? We presented five witnesses. Three of them testified, Will Holdsworth, Susan Hawk, and Kevin Rooney, that they have first-hand knowledge of the sales made by Mr. Dzirsky. One of them, Jeffrey Mates, did not know Mr. Dzirsky personally, but we would intend to call him as a trial witness in his role as the CFO, and his ability to opine on the financial records, which would have been relevant to the sales made by Mr. Dzirsky and ultimately relevant to the calculation of his bonus. So in this instance, you're dealing, again, there was no injury. St. Clair County has no nexus to this case. Looking at the other public or private interest factors, you talk about the ease of access to the testimonial evidence, and that's what we just discussed. We're dealing with the majority of the witnesses live in or near Cook County or out of state, and there's nothing in the record that confirms the out-of-state witnesses listed by plaintiffs will actually appear to testify in trial, and if so, why it would be more convenient for them to attend trial in St. Clair as opposed to Cook County. Other practical considerations, again, we're looking at a case where there's no witnesses in St. Clair, there's no connection to St. Clair, but unable to get the safe and fair witnesses, each of these folks would only be able to miss maybe a few hours of work or half a day of work to come and attend trial at the Cook County Courthouse, which is accessible by public train, bus, or car, and it would take less than an hour, but if each of them had to attend trial in St. Clair County, it would be a 300-mile drive, a flight to St. Louis, plus another 45-minute drive, plus caring for pets, other family members, finding lodging, and the like. On the contrary, the convenience for Mr. Jizerski to attend trial in Chicago would not be insignificant. Mr. Jizerski attended trainings with Safe and Fair in Chicago when he first started his employment. He acknowledges in his pleadings he traveled a lot for work in his role in sales, and for him to travel as one witness versus asking several company witnesses to come down and travel over 300 miles would be a significant burden. Turning back to the public interest factors, again, we talked about two of the three factors, the imposition of jury duty on people with no interest in this litigation, and deciding to localize controversy that has no local connection. The third factor is the administrative difficulties presented by adding litigation and congested dockets. The court's short paragraph in regards to this factor simply states it takes judicial notice of its own docket and that Mr. Jizerski will be able to enjoy a trial there without congestion, without issue. To the contrary, Cook County has 371 law judges with an average caseload of 1,200 to 1,300 cases per judge, as the statistics we cited in our brief. St. Clair County has less than 30 judges. St. Clair County is divided into the law division. How many judges are in the law division by itself? There's 371 in the law division, and then there's less than 30 in St. Clair County, and each of them has an average of nearly 2,000 cases. That's probably about 400 or so altogether in Cook. Now, how many are in criminal? I'm not aware of how many are in criminal. You're saying that basically 37 out of 48 judges in Cook County? There's 371 that would be able to preside over this dispute, and they each have an average of 1,300 cases on their docket, whereas in St. Clair County it's 2,000 cases per judge, and there's just under 30 there. So while this factor in and of itself is typically not cited as the distinguishing factor in four nonconvenience cases, it's, again, another factor that should either weigh in favor of safe and fair or at least weigh neutral if both forms believe they can give a fair trial without congestion. But taking on the totality of the circumstances, it's a reversible error that the trial court neglected to cite a single case, including Shaw, Nickel, Smith v. Walgreens, or any of the cases in the Fifth District when it issued its assessment of the public interest factors. It completely ignored this court's precedent and decided simply that it's going to assign favor to Mr. Kucerski for all of those factors without citing record testimony for two of the three factors or any case law in support. This demonstrates an abuse of discretion and reflects that the matter strongly favors transfer to Cook County. Cook County jurors would have a stronger interest in hearing a dispute about one of its companies or a company where its executives are based in regards to whether or not it pays its executive sales bonuses, unlike, say, Clark County, which would have no interest in whether a Eureka, Missouri, resident would get paid its sales bonus. Finally, we look to the issue of the counterclaim, and we understand that that's an issue that's been briefed heavily, and we would point out that the counterclaim is not listed as one of the six form nonconvenience factors in terms of the public interest factors or the private factors, and we anticipate that counsel will raise that issue during their response. The counterclaim was considered heavily by this court, yet the court didn't cite, this court, excuse me, the trial court. The trial court didn't cite a single case that says that the counterclaim is a dispositive factor in this case that would preclude transferring this case. It would defy logic to make defendants who were sued in an inconvenient or the wrong forum to have to file a second lawsuit in another part of the state and have two judges presiding over the same set of facts, the same parties, and essentially the same claims or discovery that's going to be involving the same opponents and the same written discovery, and that would defy judicial economy to force defendants to do that if this court were inclined to indulge the trial court's creation of a new form nonconvenience standard relative to counterclaims. Unless the panel has any questions upon the rest of the case at this time. Doesn't the fact that there's a counterclaim make it an important distinction between this contract case and a tort claim? Our counterclaim is also rooted in the breach of contract. So in other words, our counterclaim goes towards the same contract and Mr. Desersky's failure to perform that contract. Thank you. Please identify yourself and address. Good morning, Your Honors. My name is Megan Crowe, representing the appellee and plaintiff, Mr. Desersky, in this case. May it please the Court. This Court is no stranger to forum nonconvenience arguments. Interest-based forum nonconvenience motions have become extremely common, and I'm sure this Court hears similar fact patterns repeated time and time again. But this is not that typical forum nonconvenience case. In a typical forum nonconvenience case, the plaintiff files I apologize, Your Honor. In a typical forum nonconvenience case, the defendants accuse the plaintiff of forum shopping because he files his case in a venue that is perhaps wholly unrelated and, importantly, out of plaintiff's way because of a perception, whether real or imagined, that that venue is better for or will increase the value of the plaintiff's case. But this is not true here. I'm sure this Court is aware that Cook County, where defendant seeks to transfer this case to, has a reputation for being one of, if not the most, plaintiff-friendly venues in the state of Illinois and perhaps the nation. And so if that was plaintiff's goal, he very well may go along with defendant's attempt to transfer this case to Cook County. But what Plaintiff Duck has done here is the opposite of gamesmanship. And to the extent that Mr. Gesserse had multiple proper forums from which to choose to bring his claim, he chose St. Clair County out of convenience. This is not an improper purpose. Mr. Gesserse lives in St. Louis County, Missouri, which is just across the river about 40 miles away from St. Clair County. On the other hand, he would have to travel from his home about 300 miles to Cook County. There is no circumstance where Cook County is the more convenient venue for Mr. Gesserse to litigate his claims. And at the beginning and the end of it, that is why Safe and Fair cannot succeed on its motion. The defendant has an incredibly high burden in this case, and it's not just to show that there are some good reasons for litigating in Cook County. It has to show that exceptional circumstances exist which strongly favor transferring this case. And at the end of the day, to meet this burden, defendant has to show that Cook County is the more convenient venue for all parties, specifically including Mr. Gesserse. What's the standard of review? The standard of review is abuse of discretion, Your Honor. And so the court has looked to these- Were any of the cases cited by your opponent, were any of those not tort cases? No, Your Honor. All of these cases cited in the parties' briefing were tort cases. And while slightly distinguishable because this is a breach of contract case, the four nonconvenience factors are the same. However, in those cases, because they are tort cases, there is factual, distinguishable, important differences, which change the analysis and the outcome in this case. In the cases cited by a defendant, including Shaw, Coon, Brandt, these cases all share a similar fact pattern, which is that there's County A, which is where the plaintiff resides, in the instance of medical malpractice, where the accident occurred, in other words, where the injury occurred. And there's County B, which is where the plaintiff filed the claim. In all of these cases, the case was eventually transferred back to County A, in part because County A, the defendant could plausibly and successfully argue, was more convenient to all parties, including the plaintiffs, because the plaintiffs lived there. That can never be true here. Even in Doty, the case that is relied perhaps most heavily by defendants in this case, the plaintiff lived in Greene County and filed in Madison County. And the case was transferred back to Macoupin County, where the tort occurred and where the injury occurred. But in that case, too, Greene County and Macoupin County are directly adjacent to one another. And so it was plausible for the defendant to argue that Macoupin County was, in fact, more convenient for the plaintiff to argue than Madison County. Again, this is not true here. The plaintiff would have to drive through his chosen venue of St. Clair County, plus another 200-plus miles to get to Cook County, where a defendant would like this case heard. And there's simply no precedent or authority that we have been able to find or that defendants have cited where that has been the case, where the defendant's choice of venue, which highly inconveniences the plaintiff, was granted. And so this first factor, convenience of the parties, weighs heavily in plaintiff's favor in this case against transfer. The defendant has to show two things. One, that St. Clair County is inconvenient for it, and two, that Cook County is more convenient for all parties. The most the defendant can do here is show that Cook County is more convenient for it. And we agree. We do not dispute that Cook County is arguably more convenient for safe and fair, even though safe and fair's alleged headquarters in Cook County is nothing more than a mail drop. It is not manned by any employee, nor has any employee ever been there. It is a 100 percent remote company, and it's now scanned by third parties who work at that building and electronically send it out to safe and fair employees. What kind of product is this? Safe and fair is a snack food company. But you would agree, though, that the plaintiff's choice of form, you would get less deference if the plaintiff is out of state. You would agree with that? Absolutely, Your Honor. In this case, the parties both agree, and the trial court stated in its order, that in a case such as this, where the plaintiff does not reside in St. Clair County and the injury did not occur there, his choice is given less deference. But this simply means less deference than if either of those facts were true. It does not mean that his choice is granted no deference. And so still, in this case, plaintiff starts slightly ahead. It may not be significantly ahead, but it is still slightly ahead. And taking all these other private and public interest factors together must strongly outweigh that slight deference that is still owed to plaintiff. And in this case, defendant cannot show, cannot overcome that slight deference, but even if there were no deference, defendant still could not show that these factors taken together or separately strongly favor transfer. Because, as I mentioned, the first factor, convenience of the parties, weighs heavily in plaintiff's favor in this case. And the other five factors all resolve as neutral. I want to talk first about the second record. What about the court and judges that I asked about? I'm sorry, Your Honor? The dockets in Cook and St. Clair. Yes, Your Honor. Defendant has stated that Cook County has more judges and should be able to resolve this case, but what defendant has ignored is that they admitted in their briefing that this factor resolves neutrally because both courts are willing and able to effectively administrate these claims. And so even if there's, and defendant admitted here today, that this factor could be resolved as neutral. And even if they say that, but it still should weigh in favor of transfer, they have not met their high burden in this case to show that Cook County could strongly or heavily resolve this case more easily than St. Clair. Because defendant has admitted that this factor could be resolved as neutral, they have not met their burden. And so this factor does not weigh in favor of transfer. Speaking to the second private interest factor, which is the ease of access to testimonial evidence, this is where the parties discuss the location of witnesses. And defendant pointed out that there are five witnesses that they name that live in the Cook County area that would testify at trial. The trial court, in its discretion, looked at the testimony of these witnesses and found that most of them could not provide relevant testimony to plaintiff's claims. They found that these witnesses did not have personal knowledge of the terms of plaintiff's contract or what bonus he was owed. And so the court found that these witnesses were not relevant to this analysis. And we agree with the court's well-reasoned opinion on this fact. However, even putting that aside for a second and assuming that all of these witnesses were relevant, that still only accounts for five witnesses out of over 30 witnesses total who have been identified as having relevant information in this case. Defendant pointed out several of plaintiff's witnesses. I think he mentioned six or so of them. But there are actually over 30 witnesses that plaintiff named in his sworn interrogatories as having information relevant to his claims. And these witnesses are relevant because they are all sales representatives, individuals with whom plaintiff transacted sales. These witnesses would absolutely be in the best position to testify as to the amount of sales made. And at the heart of it, the crux of this case, is the amount of bonus that plaintiff was due but not paid based on the revenue he made from his sales. So all of these sales representative witnesses are in a position to provide relevant testimony for plaintiff's claims. And importantly, defendant cannot refute the potential relevance of these witnesses' testimony because defendant did not take their depositions. And they seemingly assert in their briefing that plaintiff should have taken the depositions to affirm or confirm the relevance of these witnesses' testimony. But that is not plaintiff's obligation. It is defense who has the burden in this case to prove that these factors strongly favor transfer. And to do that, to meet its burden, it is defendant who has to affirmatively show that these witnesses cannot provide relevant testimony. They have not done so here. So on its face, in the best-case scenario, even setting aside the relevance of Ms. Hawk and Mr. Rooney and Mr. Nates in this case, at best, in the best-case scenario, defendant names only five witnesses out of over 30 who are scattered across the country. And Langenhorst, the Supreme Court of Illinois, tells us that when there is a scattered nature of the relevant witnesses in this case, there is no predominant connection to any forum. And that is when this slight deference kicks in and weighs in favor of plaintiff against transfer. Now, I want to touch briefly on the public interest factors. We've already discussed the first one, which is congestion of courts. But I want to talk briefly on the second two, which are closely related, which is the interest in deciding local cases locally and the unfairness of imposing jury duty on citizens of the community with little connection to the controversy. Both of these factors are typically analyzed using the same fact, and this is where the cause of action accrued. Cases like Shaw, Coon, Brandt, and Dottie tell us that in analyzing these factors, courts look to where the cause of action accrued, meaning where the tort happened or where the injury happened. And in all of these cases, those two public interest factors were weighed in favor of transfer because the cause of action accrued in County A and the plaintiff filed in County B. And so these cases reason that the citizens of County A have an interest in deciding those cases. These courts can show that the case is localized to County A. That is not true here in a breach of contract case, which arises out of an omission of payment. An omission necessarily is hard to pinpoint. So where this breach of contract case initially occurred is not necessarily localized to a given location. But what we do know is where the effects of this breach were felt. The effects of this breach were felt where Mr. Jizerski resides, where he did not receive payment how he ordinarily receives payment, and that is in his home in St. Louis County, which is much closer to St. Clair County than it is to Cook County. And so for this reason, these two public interest factors are neutral here. They are distinguishable from the typical tort case, the typical bodily injury case, which can be localized. This case cannot be localized. That's not to say that all breach of contract cases cannot be, but here, whether it arises out of an omission, not out of performance in a single place, or a matter of interpretation of a local law, this case is not localized, and therefore, these factors are always neutral. A defendant would have us believe that neutral factors can be somehow made in favor of transfer, but that is not true for two reasons. First, on its face, the burden is to strongly favor transfer. So if a factor is neutral, it does not meet this burden, and defendant loses. And second, because of the slight deference owed to plaintiff's choice, that kicks in when a factor is neutral to weigh against transfer. So to summarize, of all six of these public and private interest factors, the first one, convenience of the parties, weighs heavily in plaintiff's favor because there is no circumstance where Cook County is the more convenient location for him. It is an indisputable matter of geography. And these other five interest factors cannot, together or combined, I'm sorry, separate or combined, overcome that. And so, at the end of the day, plaintiff cannot meet its burden to show that Cook County is the more convenient location, and we therefore would ask that this Court affirm the trial court's order denying transfer. Thank you, Counsel. Thank you. I'd like to briefly address a few of the comments made by Counsel. First, Counsel said that the form of Cook County is highly inconvenient for Mr. Kaczurski. Mr. Kaczurski applied to work for a Cook County business, attended his initial onboarding meetings in Cook County, and worked out of Cook County at the beginning of his employment before a lot of his sales duties went remote. To the extent that the highly convenient comment refers to court hearings and whatnot, Cook County's hearings are currently also on Zoom.  So he could attend every single court hearing if he wished, and the only time he would have to commute to Cook County is one time for his own trial. Second, we've been having in-person court hearings, which comes at a cost of our client and us wanting to attend. In St. Clair County, we've been doing hearings in person. Some have been, the court has occasionally said some can be remote, but most of our hearings, I've been down there several times. In terms of locations of the witness, Counsel mentions for the first time today and not in their brief that there's over 30 other witnesses who may be relevant. When we look back at the appellee's brief, the appellee lists the people in New York, Brazil, Ohio, North Carolina, and one gentleman in Missouri. Counsel still today has not identified a witness in St. Clair County or in Illinois who's going to come testify at trial. None of those 30 people are listed as having relevant first-hand knowledge of the contract. Counsel previously said, before mentioning those 30 witnesses, that the trial court referenced its exclusion of safe and fair witnesses because none of them had explicitly seen the employment contract between Mr. Dzirsky and the company. Yet the disclosures of these 30 people who did sales with Mr. Dzirsky, none of them saw the contract either. So it defies logic to think that those 30 people would be admitted. Third, the court said that DeShaw, Coon, and Smith versus Walgreens in these cases had something in common. They did. They were all St. Clair County trial court cases that got transferred to the proper forum where they belonged. This case could have been filed in many other forums. They also had one other thing in common. Except for Brandt, I was in all those cases. Yes, Your Honor, and one more thing about those cases, none of them were cited in the trial court's order, despite being well-established Fifth District precedent that the court in St. Clair County should be well aware of. And it's an abuse of discretion or reversible error of law for a trial court judge to simply ignore time and time again well-established appellate court precedent in its own district. A trial judge can't pick and choose to ignore cases that it doesn't agree with. Appellant Safe and Fair respectfully asked this court to find that the trial court abused its discretion by ignoring Fifth District precedent when it applied the law, by not conducting the proper balancing of the six factors, particularly the public interest factors, but as well as its analysis of the private interest factors regarding the witness. And as a result of this abuse of discretion, we respectfully ask that this court reverse the trial court's denial of Safe and Fair's motion to amend, I'm sorry, amended motion to amend, and transfer this case in its entirety to Cook County. Thank you very much. Any further questions? Thank you, Counsel. Thank you. We will take this matter under advisement and issue a ruling in due course.